ERCOLE CASSELLA *v.* BETH A. KLEFFKE
(13199)

O'CONNELL, LANDAU and SCHALLER, Js.

Argued January 9—decision released July 4, 1995

*Robert G. Oliver,* with whom, on the brief, was *David J. Crotta, Jr.,* for the appellant (defendant).

*Dale W. Radcliffe,* with whom was *Samuel J. Lazinger,* for the appellee (plaintiff).

O'CONNELL, J. The defendant appeals following the trial court's granting of the plaintiff's motion to open a judgment of dismissal that had been rendered under the dormant case program. The defendant claims that (1) the trial court lacked jurisdiction to open the judgment of dismissal, (2) transfer of the case from Bridgeport to New Haven did not operate to set aside the judgment of dismissal, and (3) the trial court improperly found that the defendant waived her right to object to opening the judgment of dismissal. We reverse the action of the trial court and direct reinstatement of the judgment of dismissal.

The following facts are necessary to a disposition of this appeal. The plaintiff instituted this action seeking damages for personal injuries suffered in an automobile accident. The writ, summons and complaint were

returnable on October 16, 1990, to the Superior Court in the judicial district of New Haven. Although New Haven was the correct venue, the writ, summons and complaint were mistakenly sent to the Superior Court in the judicial district of Fairfield at Bridgeport. There was no venue in Bridgeport.[1]

Despite the lack of venue, the case was entered on the Bridgeport docket, and, on November 28, 1990, the Bridgeport clerk notified the plaintiff's counsel that the case had been assigned docket number CV-90-0275541 S. Despite the institution of the action, the plaintiff's counsel and the defendant's insurance carrier continued their efforts to settle the case without actual litigation until the fall of 1991, when the matter was referred to defense counsel.

The defendant's counsel filed an appearance dated October 29, 1991, in New Haven, followed on November 26, 1991, by an appearance in Bridgeport. The latter bore the correct Bridgeport docket number. On December 3, 1991, the Bridgeport Superior Court issued a report of the appearance status of the case in that court. This status report, properly listing the names and addresses of counsel for both parties, was sent to both counsel.

In the meantime, on October 16, 1991, the case had appeared on the Bridgeport dormancy calendar, and the plaintiff was notified that a Practice Book § 251

---

[1] No explanation was offered as to why the matter was not treated under Practice Book § 213, which expressly applies to this type of situation. Section 213 provides: "A clerk of the court of a judicial district or geographical area should not accept a civil cause which is made returnable to a judicial district or geographical area of which such person is not the clerk. If he does accept and enter such a civil cause, the clerk, upon discovery of the error, shall bring the matter to the attention of the court. The court shall then order the plaintiff to file a motion to transfer with such notice to the defendant as the court may direct. If the plaintiff complies, the motion to transfer shall be granted; but if the plaintiff fails to comply with the court order within a reasonable time, the court shall dismiss the action with costs."

dismissal[2] would enter on December 6, 1991, unless the pleadings were closed by that date. The pleadings were never closed, and, on November 21, 1991, the plaintiff filed a motion for exemption from dormancy, which was rejected by the court, *Lewis, J.,* as untimely.

On November 25, 1991, the plaintiff moved to transfer the matter to New Haven. The case was dismissed for dormancy in Bridgeport on December 6, 1991, with notice issued on December 13, 1991. Meanwhile, on December 9, 1991, the court, *Hartmere, J.,* granted the motion to transfer, with notice issued on December 11, 1991. The file was not physically transferred to New Haven until December 27, 1991, where it was issued a new docket number—CV 90-0326473 S.

Following the transfer, the parties continued to correspond for a time in an attempt to settle the case. These efforts proved unsuccessful, and, on March 4, 1993, the plaintiff filed a motion for default for failure of the defendant to plead. The New Haven clerk returned the motion to the plaintiff on April 20, 1993, with a letter explaining that, because of the December 6, 1991 dismissal, the motion could not be recorded on the computer.[3]

---

[2] Practice Book § 251 provides in relevant part: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests."

[3] The letter from the New Haven clerk to Attorney Raymond Rubens states as follows: "The enclosed motion for default for failure to plead, filed with this Court on March 4, 1993, is being returned to you since this matter is no longer pending on our docket.

"This case was transferred from Bridgeport Superior Court on December 9, 1991. However, a judgment of dismissal was entered on December 6, 1991, in connection with the Fall 1991 Dormant Cases Program. There is nothing in the file indicating that the transfer, which apparently was ordered after the dismissal was recorded on the computer, affected the dor-

On May 3, 1993, the plaintiff filed a motion to open the judgment of dismissal, which was granted by the court, *DeMayo, J.,* on December 22, 1993. Additional facts are included in the course of our analysis.

## I

Generally, the granting of a motion to open a prior judgment is not a final judgment and, therefore, not immediately appealable. *State* v. *Phillips*, 166 Conn. 642, 646, 353 A.2d 706 (1974). An exception to this rule, however, allows the appeal if it challenges the power of the trial court to open the judgment. *Solomon* v. *Keiser*, 212 Conn. 741, 747, 562 A.2d 524 (1989). Because the gravamen of the defendant's claim here is that the trial court lacked jurisdiction to open a Practice Book § 251 judgment of dismissal nearly seventeen months after it was rendered, the judgment is immediately appealable.

## II

Because the first two issues are closely related, we will analyze them together. The purpose of § 251 is to prevent inactive cases from clogging the docket. *Nickerson* v. *Gachim*, 183 Conn. 413, 415, 439 A.2d 379 (1981). All is not lost, however, for a party against whom a § 251 dismissal has been rendered. General Statutes § 52-212a[4] and Practice Book § 326[5] both allow

---

mant status of this case. Since the motion cannot be recorded on the computer in view of the entry of the dismissal, it is returned herewith."

[4] General Statutes § 52-212a provides in relevant part: "CIVIL JUDGMENT OR DECREE REOPENED OR SET ASIDE WITHIN FOUR MONTHS ONLY. Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . . The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court . . . ."

[5] Practice Book § 326 provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing

a trial court, in its discretion, to open any such judgment within four months of the date the judgment was rendered. During the four month period, while the case lies nominally "dismissed," of necessity it actually remains on the court docket so that motions to open may be addressed to it. *Lake Garda Co.* v. *Lake Garda Improvement Assn.*, 156 Conn. 61, 65, 238 A.2d 393 (1968).

The foregoing recitation of the chapter and verse of the case's motion history is complete and accurate and superficially appears convoluted and confusing. For purposes of this decision, however, the following brief synopsis is helpful. The plaintiff had only one case captioned *"Ercole Cassella* v. *Beth A. Kleffke"* pending on the Bridgeport docket. The plaintiff was notified that this case was dismissed under the § 251 dormancy program. The plaintiff was also notified that the case was transferred to New Haven. The plaintiff made no effort to open the dismissal in either court until nearly seventeen months after the dismissal. Because the trial court's jurisdiction to open a judgment is limited to motions filed within four months of the dismissal, the plaintiff's motion was untimely, and the court lacked jurisdiction to grant it.

This case involves a limited question of notice. The plaintiff does not contest receipt of notice of the December 6, 1991 dismissal of the case bearing the Bridgeport docket number. Thus, the four month period for opening the judgment indisputably expired on April 6, 1992, unless that notice was ineffective because it did not contain the recently assigned New Haven docket number.

jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court."

The plaintiff argues that he received notice of the dismissal only of a case with the proper name but bearing the Bridgeport case number, not the New Haven case number. Thus, he contends that he never received notice of dismissal of the New Haven case, and, therefore, the four months never started to run. We are not persuaded. There were never two cases with the same name but two different numbers—there was only one case, and the plaintiff received notice of its dismissal. Moreover, it was the plaintiff who sought transfer of that case from Bridgeport to New Haven. It is not realistic for the plaintiff to believe that the case dismissed in Bridgeport was anything other than the very same case that he caused to be transferred to New Haven. His tautological argument based on docket numbers is not convincing.

Practice Book § 215 provides the mechanics for transferring a case from one judicial district to another.[6] The relevant portion of § 215 provides that "[u]pon the transfer of any action . . . such cause shall thereafter be proceeded with in the same manner as if it were originally brought to [the transferee] court." When a case is transferred from one judicial district to another, it goes with all the baggage that it collected at the first location. Transfer does not eliminate, terminate, vitiate or invalidate prior orders entered in the case.[7] The December 6, 1991 dismissal was transferred as part of the file when it went to New Haven. The sole effect of the transfer on the dismissal was to make New Haven, rather than Bridgeport, the place where a motion to open had to be filed before April 6, 1992.

---

[6] Practice Book § 215 provides in relevant part: "Upon the transfer of any action, the clerk of the court in which such action is pending shall transmit to the clerk of the court to which such cause is transferred the original files and papers in such cause with a certificate of such transfer, who shall enter such cause in the docket of the court to which it is so transferred; and such cause shall thereafter be proceeded with in the same manner as if it were originally brought to such court. . . ."

[7] See footnote 6.

We conclude that the irregular case history here did not excuse the plaintiff from moving to open the case within four months, and, therefore, the trial court lacked jurisdiction to grant the plaintiff's motion to open the dismissal.

## III

The defendant's final claim is that there is no basis in the record to support the trial court's finding that the defendant had waived her right to object to the opening of the judgment. This claim arises out of the final sentences of General Statutes § 52-212a and Practice Book § 326, which both provide that "[t]he parties may waive the provisions of this [section or paragraph] or otherwise submit to the jurisdiction of the court." "Waiver involves an intentional relinquishment of a known right. . . . There cannot be a finding of waiver unless the party has both knowledge of the existence of the right and *intention to relinquish it.* . . . Waiver may be inferred from the circumstances if *it is reasonable so to do.* . . . Whether conduct constitutes a waiver is a question of fact." (Citations omitted; emphasis added; internal quotation marks omitted.) *Fisette* v. *DiPietro*, 28 Conn. App. 379, 385, 611 A.2d 417 (1992).

"When the trial court is required to make a finding that depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *Morelli* v. *Manpower, Inc.*, 34 Conn. App. 419, 423–24, 642 A.2d 9 (1994). In order to prevail at this trial-like hearing the movant must introduce evidence to establish his claim.

The record of the trial-like evidentiary hearing in the present case does not disclose any evidence that the defendant waived her right to challenge the opening

of the dismissal. No evidence was introduced of conduct on the part of the defendant subsequent to a letter, dated January 25, 1992, from her counsel to the plaintiff indicating that the matter was being held in abeyance while the plaintiff negotiated with the insurance company.[8]

The defendant's letter of January 25, 1992, was well within the four month period with more than adequate time for the plaintiff to file the necessary motion. The defendant asserted, at oral argument, that although she may have been willing to continue to negotiate settlement of the case, at all times she assumed that the plaintiff would move to set aside the judgment within four months and never intended to waive the benefit of a dismissal should the plaintiff fail to move timely to set it aside.

In determining waiver, the conduct of the parties is of great importance. Our Supreme Court has held that "[t]here can be no waiver . . . if the party being haled into court '[f]ar from consenting to or waiving objection to [the court's] action . . . advance[s] strenuous opposition to it and steadfastly maintain[s] that position thereafter." *In re Baby Girl B.*, 224 Conn. 263, 292, 618 A.2d 1 (1992), quoting *Lake Garda Co.* v. *Lake Garda Improvement Assn.*, supra, 156 Conn. 65. "Under these circumstances, the court was without power to grant . . . the [motion to restore to the docket]." *Lake Garda Co.* v. *Lake Garda Improvement Assn.*, supra, 65.

In the present case, the defendant filed a vigorous and prompt objection to the plaintiff's motion. The

---

[8] The relevant part of the January 25, 1992 letter states: "We [will] continue to hold the matter in abeyance under the agreement for an extension of time between you [the plaintiff] and the [insurance company].

"It is understood that you will file no motions for default or other pleadings until you contact me first."

objection directly and unequivocally challenged the trial court's jurisdiction to act. We agree with the defendant that there was no evidence from which the trial court could find waiver.

The judgment is reversed and the case is remanded with direction to reinstate the judgment of dismissal.

In this opinion the other judges concurred.