## STATE OF CONNECTICUT *v.* TRAVIS HAMPTON
## (SC 17715)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 11—officially released September 15, 2009

*Raymond L. Durelli*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Sandra Tullius*, senior assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, Travis Hampton, appeals[1] from the judgment of the trial court rendered

---

[1] The defendant appeals directly to this court from the judgment of the trial court pursuant to General Statutes § 51-199 (b) (3).

after a jury trial, convicting him of attempt to commit murder in violation of General Statutes §§ 53a-49 (a), 53a-8 and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, kidnapping in the first degree in violation of General Statutes §§ 53a-8 and 53a-92 (a) (2) (A), conspiracy to commit kidnapping in the first degree in violation of §§ 53a-48 and 53a-92 (a) (2) (A), assault in the first degree in violation of General Statutes §§ 53a-8 and 53a-59 (a) (5), conspiracy to commit assault in the first degree in violation of §§ 53a-48 (a) and 53a-59 (a) (5), sexual assault in the first degree in violation of General Statutes §§ 53a-8 and 53a-70 (a) (1), conspiracy to commit sexual assault in the first degree in violation of §§ 53a-48 (a) and 53a-70 (a) (1), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). The defendant claims on appeal that the trial court improperly: (1) denied his motion to suppress a written confession that he had made after waiving his *Miranda* rights;[2] (2) failed to instruct the jurors that they had to agree unanimously on the factual basis underlying the sexual assault charges against the defendant; and (3) failed to instruct the jurors adequately on the specific intent necessary to convict the defendant as an accessory on the charges of attempt to commit murder, kidnapping in the first degree, assault in the first degree and sexual assault in the first degree. In addition, the defendant claims that his convictions for kidnapping in the first degree and conspiracy to commit kidnapping in the first degree should be reversed in light of this court's construction of our kidnapping statute in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 1:30 a.m. on August 23, 2003,

---

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the defendant was with his friend, James Mitchell, when Mitchell received a telephone call from the victim,[3] a young woman he knew, asking for a ride to her home in East Hartford. Mitchell drove his car to the location of the victim and picked her up. The three then drove to a nearby restaurant. After entering the restaurant and remaining there for a while, the defendant and the victim returned to the car, where Mitchell had remained. Mitchell told the victim that he would drive her home, but he did not. Instead, Mitchell began angrily questioning the victim as to the whereabouts of her brother, who, both Mitchell and the defendant suspected, was involved in a romantic relationship with Mitchell's former girlfriend. The victim informed Mitchell and the defendant that her brother was staying at her grandfather's house, but after driving there, Mitchell and the defendant realized that the victim had lied to them. Mitchell then drove first to his mother's house in Hartford, and then to an apartment complex. The victim repeatedly pleaded with Mitchell to take her home, but he did not comply. Mitchell drove his car from the apartment complex and brought the victim and the defendant to a closed gas station near Market Street in Hartford and parked behind the building, where it was dark. At this time, more than three hours had elapsed since Mitchell and the defendant had picked up the victim.

Mitchell then told the victim to get out of the car because he wanted to talk to her. Mitchell, the defendant and the victim exited the car. The victim, anticipating that "something bad" was about to happen, started to walk away, but stopped when the defendant took a shotgun out of the car and pointed it at her face. After the victim refused to tell Mitchell her brother's location,

---

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Mitchell became angry and ordered the victim to take her clothes off. The victim removed her pants, and Mitchell sexually assaulted her by engaging in vaginal intercourse with her. The defendant kept the shotgun pointed at the victim throughout the assault.[4]

Angry and scared, the victim pleaded with Mitchell and the defendant to let her go. Mitchell then gave the victim the choice to climb into a nearby dumpster or attempt to run away. As the victim started running, Mitchell fired the shotgun hitting her in the stomach. The victim continued to run toward the front of the gas station, and Mitchell followed her in the car while the defendant pursued her on foot, holding the shotgun. Despite the victim pleading with the defendant to stop, he shot and wounded her in the right side. The victim, bleeding profusely, ran across Market Street and tried to hide behind some trees on the side of the road. The defendant followed her and shot at her several more times, hitting her in the face and the upper thigh. The victim then dropped to the ground and pretended to be dead. The defendant walked over to the victim, who was lying on the ground, and shot her one final time in her left arm. Thinking that the victim was dead, the defendant got back into the car, which Mitchell was driving, and they drove away. They quickly returned, however, to verify that the victim was dead. The defendant got out of the car, walked over to the motionless victim, kicked her once, and said, "She's dead." The defendant and Mitchell then again drove away.

---

[4] The state also offered the following evidence at trial to support its charge against the defendant of first degree sexual assault as a principal. After Mitchell sexually assaulted the victim, the defendant handed the shotgun to Mitchell, who pressed the shotgun to the back of the victim's head and ordered the victim to perform oral sex on the defendant, which she did. The defendant then briefly engaged in vaginal intercourse with the victim. The jury acquitted the defendant of the charge of first degree sexual assault as a principal.

The victim subsequently was discovered by a passerby and ultimately was taken to the hospital, where, after receiving medical attention, she informed authorities that Mitchell and a person that she did not know, later identified as the defendant, had sexually assaulted and shot her. Late in the evening of August 27, 2003, Mitchell and the defendant were arrested. The defendant thereafter was charged with the multiple offenses previously set forth herein. At the police station, the defendant was informed of, and signed a waiver and acknowledgment of, his *Miranda* rights. He then told the police detectives his version of the incident, and also provided and signed a written statement of what had occurred.

Prior to trial, counsel for the defendant filed a motion to suppress all statements taken from the defendant by law enforcement authorities at the police station after the defendant had been arrested. After a hearing on the motion, the trial court denied it. Following a jury trial,[5] the defendant was convicted of all of the charges against him except sexual assault in the first degree as a principal. See footnote 4 of this opinion. The trial court rendered judgment in accordance with the jury's verdict. This appeal followed.

I

The defendant first claims that the trial court improperly denied his motion to suppress the written confession he made following the waiver of his *Miranda* rights. Specifically, the defendant asserts that, when the interviewing detective incorrectly advised the defendant that it would be "in his best interest" to talk

---

[5] The defendant and Mitchell were interviewed by the police, charged with various offenses and tried separately. Mitchell was convicted of charges similar to those against the defendant. The Appellate Court subsequently affirmed Mitchell's conviction. See *State* v. *Mitchell*, 110 Conn. App. 305, 955 A.2d 84, cert. denied, 289 Conn. 946, 959 A.2d 1012 (2008).

to the police, the detective impermissibly "altered" the *Miranda* rights previously read to and waived by the defendant and made the prior waiver "inadequate . . . ." The defendant thus contends that his rights under the fifth and fourteenth amendments to the United States constitution were violated. In addition, the defendant requests, to the extent that his claim is unpreserved, that we review the claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] In response, the state claims that the trial court properly denied the defendant's motion to suppress his written confession because the defendant had knowingly, voluntarily and intelligently waived his *Miranda* rights prior to speaking with the detectives. We conclude, first, that the defendant's "alteration" claim was not distinctly raised in the trial court, and, therefore, is unpreserved. We further conclude that the defendant's request for *Golding* review is unavailing as he has failed to provide an adequate record to review this claim.

It is well settled that "[o]ur case law and rules of practice generally limit this court's review to issues that are distinctly raised at trial. See, e.g., *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 550, 911 A.2d 712 (2006) (declining to consider claim not raised before habeas court); *State* v. *Fagan*, 280 Conn. 69, 85–89, 905 A.2d 1101 (2006) (declining to review claim not preserved at trial) [cert. denied, 549 U.S. 1269, 127

---

[6] Under *State* v. *Golding*, supra, 213 Conn. 239–40, a defendant may prevail on an unpreserved claim only if: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Fabricatore*, 281 Conn. 469, 477, 915 A.2d 872 (2007).

S. Ct. 1491, 167 L. Ed. 2d 236 (2007)]; Practice Book § 60-5 (court not bound to consider claim unless distinctly raised at trial)." *State* v. *Canales*, 281 Conn. 572, 579, 916 A.2d 767 (2007). In the present case, the defendant's motion to suppress alleged only that the defendant's statement was "taken in violation of rights guaranteed by both the Connecticut and [United States] constitutions." The motion did not refer in any way to the "best interest" statement allegedly made by the detective. During the hearing on the motion to suppress, counsel for the defendant did not at any time articulate the alteration claim. The hearing consisted solely of the state calling one of the interviewing detectives, Detective William Siemionko of the Hartford police department, to testify about the statement that he had made to the defendant. Siemionko testified that, after the defendant had signed a written waiver of his *Miranda* rights and after the defendant admitted that he had shot the victim, he told the defendant: "These are obviously very serious charges. It's in your best interest to talk to us. Give us your side of the story." The defendant did not testify nor call any witnesses of his own. At the conclusion of the hearing, counsel for the defendant did not argue that Siemionko's statement "altered" the *Miranda* rights previously given nor did he claim that the statement rendered the prior written waiver of *Miranda* rights inadequate. The trial court denied the motion to suppress in a written memorandum of decision in which the court found that the defendant had waived his *Miranda* rights both explicitly and implicitly. The memorandum does not address in any way Siemionko's statement that it would be in the defendant's best interest to talk to the detectives. The claim, therefore, is not preserved.

We turn, therefore, to the defendant's request for *Golding* review. The first *Golding* requirement is that the record be "adequate to review the alleged claim of [constitutional] error . . . ." *State* v. *Golding*, supra, 213 Conn. 239. "The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed

by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." Id., 240. In the present case, we have no factual findings at all relating to the defendant's claim that Siemionko's "best interest" statement to the defendant altered his prior advisement of *Miranda* rights and rendered his prior waiver of his *Miranda* rights inadequate. We have no factual findings as to the impact of the "best interest" statement on the defendant. We do not know whether the statement overrode or altered his prior understanding of his *Miranda* rights, nor do we know whether the statement had any effect on the defendant at all. In the absence of an adequate record setting forth such critically important findings, we cannot determine whether a constitutional error occurred.

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative. . . . *State* v. *Talton*, 63 Conn. App. 851, 861, 779 A.2d 166, cert. denied, 258 Conn. 907, 782 A.2d 1250 (2001)." (Internal quotation marks omitted.) *State* v. *Duteau*, 68 Conn. App. 248, 254, 791 A.2d 591, cert. denied, 260 Conn. 939, 835 A.2d 58 (2002).

## II

The defendant next claims that the trial court improperly failed to instruct the jurors that they had to agree unanimously on the factual basis underlying the sexual assault charges against the defendant.[7] Specifically, he claims that the trial court was required to instruct the jury that it had to agree unanimously as to whether the

[7] We note that because the defendant was acquitted of the crime charged in count seven of the information, that is, sexual assault in the first degree as a principal, he is not aggrieved by that judgment. "[P]roof of aggrievement is . . . an essential prerequisite to the court's jurisdiction of the subject

defendant had acted as an accessory or as a principal. The defendant concedes that he did not take exception to the trial court's jury instructions on this ground, and requests that we review the claim under *State* v. *Golding*, supra, 213 Conn. 239–40. The state contends that the defendant's claim is not reviewable because defense counsel waived any such claim by specifically agreeing to the very jury instruction he disputes on appeal. We agree with the state.

The following undisputed additional facts and procedural history are relevant to our resolution of the defendant's claim. At trial, the defendant did not file a request to charge. Before it charged the jury, the trial court held a charging conference at which it reviewed, page by page, its written charge with the parties. The trial court gave both parties a printed copy of the jury instructions for their review. During the charging conference, with regard to counts seven and eight of the information, which both alleged sexual assault in the first degree, the trial court specifically inquired of the parties as to whether there would be a unanimity problem because the state had failed to allege in the information which specific acts of sexual intercourse had occurred. In response, the state pointed out that count eight of the information concerned the defendant's participation in aiding Mitchell in Mitchell's sexual assault of the victim.[8] Because the evidence supported a finding

matter of the appeal. . . . Ordinarily, a party that prevails in the trial court is not aggrieved." (Internal quotation marks omitted.) *State* v. *Sandres*, 86 Conn. App. 757, 763–64, 862 A.2d 857 (2005). Accordingly, we review the defendant's claim only as it applies to his conviction on count eight of the information, that is, the charge of sexual assault in the first degree as an accessory.

[8] "The Court: Well, then the question is [whether] there [is] any requirement of specific unanimity on [counts seven and eight] . . . . [T]he question is who did what. . . . [The types of sexual contact] are not conceptually different. . . . They're just factually different. . . . [B]ut I need to know what I am going to be telling the jury and you need to know what you're going to be allowed to argue. . . .

"The Clerk: Count seven is only going to be charged to the jury as principal. . . .

"[The Court Officer]: As to count eight, my understanding of the law is there is no specific unanimity as to either principal or accessory; however, there is specific unanimity as to *Pinkerton*. . . .

that Mitchell had engaged *only* in vaginal intercourse with the victim, the state noted that there would be only one factual basis upon which the jury could find the defendant guilty, and, thus, there would be no unanimity problem.[9]

After this colloquy, the trial court solicited additional suggestions from the parties with regards to the jury charge. When the state responded that nothing else was required, the trial court explicitly asked defense counsel whether he had any further changes. Defense counsel responded that his "only request" related to a conspiracy charge under *Pinkerton* liability.[10] After the trial court addressed that concern, it again directly asked defense counsel, "Anything else?" to which defense

---

"[The Prosecutor]: Because [count eight] has to do with [Mitchell] having sex with her."

[9] During the charging conference, the defendant, the state and the trial court discussed that, specifically as to count eight, the defendant was charged and could be found liable as a principal, as an accessory, or under the *Pinkerton* doctrine of vicarious liability. See *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). The trial court thus charged the jury in accordance with this discussion. This, however, was incorrect. Count eight of the information alleged *only* that the defendant had acted as an *accessory* by aiding Mitchell in sexually assaulting the victim. Accordingly, the trial court's jury instruction as to count eight was inconsistent with the crime charged in the information. Although "[t]he trial court cannot by its instruction change the nature of the crime charged in the information"; *State* v. *Gradzik*, 193 Conn. 35, 38, 475 A.2d 269 (1984); it is significant that neither the state nor the defendant took exception to this instruction at trial, and that, on appeal, the defendant has not challenged this specific aspect of the instruction. We therefore treat this claim as abandoned. See *QuesTech Financial, LLC* v. *Benni's, LLC*, 105 Conn. App. 749, 752 n.1, 939 A.2d 1220, cert. denied, 287 Conn. 916, 951 A.2d 567 (2008); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

[10] "The Court: Now, we need—what else do we need on these charges, I mean on these counts [three, five, and eight]?

"[The Prosecutor]: I don't—I didn't see anything else, Judge, that—

"[The Court]: [Defense counsel], do you see anything? Now—I will wait for your answer . . . .

"[Defense Counsel]: The only request I would make is on page 29. . . . First full paragraph.

"The Court: Page 29 comes under the rubric of *Pinkerton* or conspiracy under *Pinkerton*?

"[Defense Counsel]: At the end of it, I would like the following to be

counsel responded, "No." The trial court then ordered that, after the lunch recess, the parties be presented with a complete copy of the instructions containing all the revisions, which the court and counsel would review together.

After the parties reviewed the revised instructions, the trial court again directly solicited comments from both parties. Defense counsel stated that he had received and reviewed the instructions and that they "appear[ed] to be in order." Immediately following this exchange, the trial court again asked specifically about the unanimity issue with regard to the sexual assault charges in counts seven and eight of the information. The court officer responded that no unanimity charge was necessary. The trial court then asked both parties whether they wanted more time to review the unanimity charge. Defense counsel declined the offer. The trial court then asked counsel again if there were any objections or changes.[11] Defense counsel responded, "No."

In its final jury charge, the trial court included a unanimity charge in its jury instructions as to count eight, but instructed the jury that it did not have to be unanimous in deciding whether the defendant was

---

added: or you may find otherwise. If you read the paragraph, because it begins with you may find . . . . Not significant, I mean, that significant."

[11] "The Court: All right. Anything on the charges? Did you get copies of the new ones? . . .

"[Defense Counsel]: The instruction, sure. . . .

"The Court: And a copy of the verdict form.

"[Defense Counsel]: Yes.

"The Court: Okay. Have you looked through those?

"[Defense Counsel]: Yes. They appear to be in order. . . .

"The Court: . . . What did we determine on unanimity on the sex[ual] assault, factual unanimity?

"[The Court Officer]: That because the way the charges are broken up, whichever of the two acts that count seven encompasses, there is no factual requirement to different ways of committing the same crime. And then the third act where [the defendant] is alleged to have been an accessory to [Mitchell's] intercourse . . . you have the principal-accessory extravaganza, [therefore] . . . no specific unanimity requirement.

"The Court: So on the eighth count—all right. And you guys have—then you guys have basically got the charge. You want a little time to look it over and note any, anything you want changed? Now's the time.

"[Defense Counsel]: That's fine. . . .

guilty as a principal or an accessory.[12] At the end of its jury instructions, the trial court asked the parties whether either took exception to the charge, and neither party did. The jury ultimately acquitted the defendant of count seven, which alleged sexual assault in the first degree as a principal, and convicted him of the remaining charges, including sexual assault in the first degree as charged in the eighth count.

We begin with the defendant's request that we review his unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 6 of this opinion. " 'A defendant in a criminal prosecution may waive one or more of his or her fundamental rights.' *State* v. *Cooper*, 38 Conn. App. 661, 669, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996), citing *State* v. *Patterson*, 230 Conn. 385, [392] 645 A.2d 535 (1994). 'In the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial.' *State* v. *Cooper*, supra, 667." *State* v. *Fabricatore*, 281 Conn. 469, 478, 915 A.2d 872 (2007). "[A] constitutional claim that *has* been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a

"The Court: . . . Any objections? Any additions? Any subtractions?

"[Defense Counsel]: No."

[12] The trial court instructed the jury as to count eight in relevant part as follows: "Under this count, the state has alleged [that] the defendant committed this crime either as a principal or as an accessory, as I've previously defined those for you, or by vicarious . . . liability [under *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946)]. For you to find the defendant guilty of this charge, you must unanimously find that the state has proven all the elements of this crime beyond a reasonable doubt, including identity. *If you as a jury conclude [that] the defendant is guilty as a principal or as an accessory, you need not be unanimous regarding whether you believe he was a principal or [an] accessory, as long as all six jurors agree that at least one method, principal or accessory, has been proven beyond a reasonable doubt.* If you as a [jury] conclude that the defendant is guilty by way of *Pinkerton* liability, you must agree upon that unanimously." (Emphasis added.)

fair trial . . . . Id., 482; accord *State* v. *Brewer*, 283 Conn. 352, 361, 927 A.2d 825 (2007). To reach a contrary conclusion would result in an ambush of the trial court by permitting the defendant to raise a claim on appeal that his or her counsel expressly had abandoned in the trial court. See, e.g., *State* v. *Fabricatore*, supra, 482–83." (Emphasis in original; internal quotation marks omitted.) *State* v. *Holness*, 289 Conn. 535, 543, 958 A.2d 754 (2008).

"[W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice." (Internal quotation marks omitted.) *State* v. *Fabricatore*, supra, 281 Conn. 482 n.18; see *State* v. *Felder*, 95 Conn. App. 248, 254–55, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006). "In determining waiver, the conduct of the parties is of great importance." *Cassella* v. *Kleffke*, 38 Conn. App. 340, 348, 660 A.2d 378, cert. denied, 235 Conn. 905, 665 A.2d 899 (1995). "[W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Internal quotation marks omitted.) *State* v. *Foster*, 293 Conn. 327, 337, 977 A.2d 199 (2009). Thus, "[w]aiver . . . involves the idea of assent, and assent is an act of understanding." (Internal quotation marks omitted.) *State* v. *Ross V.*, 110 Conn. App. 1, 4–5, 953 A.2d 945, cert. denied, 289 Conn. 939, 958 A.2d 1247 (2008).

In the present case, the issue as to which the defendant seeks *Golding* review, i.e., whether a unanimity instruction should have been given on the sexual assault charge in the eighth count of the information, was highlighted twice during charging conferences. The first time was during the morning charging conference with the trial court, during which defense counsel stated that he had no changes to request regarding unanimity. Then, after the luncheon recess, and after the parties had been given a complete copy of the revised instructions to review, defense counsel stated that the charge was "in order." The trial court then specifically raised

once again the lack of a unanimity charge on the sexual assault charge in count eight of the information and asked counsel for any objections or changes. Defense counsel stated that he had none.

The record in the present case therefore demonstrates that defense counsel had been made aware of the issue regarding the unanimity charge not once, but twice, and in both instances, despite requests from the trial judge for any changes, additions or deletions, defense counsel stated that he had none, thus assenting to the charge that was given. Permitting the defendant now to seek reversal of his conviction due to the unanimity charge to which he assented at trial would result in an ambuscade of the trial court. See *State* v. *Holness*, supra, 289 Conn. 543. Thus, we deem this claim waived, and we decline to review it.

### III

The defendant next claims that the trial court improperly failed to instruct the jurors adequately on the specific intent necessary to convict the defendant as an accessory on the charges of attempt to commit murder, kidnapping in the first degree, assault in the first degree and sexual assault in the first degree. Specifically, the defendant asserts that with each of these charges, the trial court improperly referred the jury back to its previous instructions of specific intent and accessory liability, without further elaboration. The defendant again concedes that he did not take exception to the trial court's jury instructions on this ground, and requests that we review the claim under *State* v. *Golding*, supra, 213 Conn. 239–40. In response, the state claims that the trial court's comprehensive instructions were proper because they amply guided the jury to the correct understanding of the specific intent required to convict the defendant of these four charges, and, therefore, it is not reasonably possible that the jury was misled. We agree with the state, and conclude that, although the defendant's claim is reviewable under *Golding* because the record is adequate for review and the claim is of constitutional magnitude; see *State* v. *Lawrence*, 282 Conn. 141, 178–80, 920 A.2d 236 (2007); the claim fails

under *Golding*'s third prong because it is not reasonably possible that the jury was misled.

The following undisputed additional facts and procedural history are relevant to our resolution of the defendant's claim. Before delivering its jury instructions, the trial court provided each of the jurors with a written copy of the charge to be given. In its final jury charge, the trial court instructed the jury on the general concept of specific intent and stated that it applied to, inter alia, count one, which alleged attempt to commit murder, count three, which alleged kidnapping in the first degree, count five, which alleged assault in the first degree, and count eight, which alleged accessory to sexual assault in the first degree. After this portion of the jury instructions, the trial court took a recess and asked the parties if they took exception to any portion of the charge as given up to that point. Defense counsel explicitly replied in the negative. After the recess, the trial court instructed the jury that for the crimes of first degree kidnapping, first degree assault, and first degree sexual assault as an accessory in count eight of the information, the state had alleged that the defendant had committed those crimes as a principal, as an accessory, or under the *Pinkerton* theory of vicarious liability. See *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). The trial court then delivered a detailed and comprehensive instruction of accessory liability.[13]

The trial court then instructed the jury on the substantive elements of these three crimes as charged. The trial court instructed the jury that specific intent was required for each crime, and referred the jury back to its "previously described" definition of specific intent.

---

[13] The trial court's jury instructions regarding accessory liability provided in relevant part: "To find the defendant guilty under the concept of accessory liability means that the state has proven that the defendant, acting with the mental state required for the commission of an offense, intentionally aided another person to engage in conduct which constitutes the offense and shall be criminally liable for such conduct and may, therefore, be prosecuted and punished as if he was the principal offender. . . . [F]or the defendant to be guilty as an accessory, it must be established that he acted with the

To the extent that the defendant was charged as an accessory to each of these crimes, the trial court additionally referred the jury back to its previous instructions on accessorial liability. Finally, the trial court instructed the jury as to the charge of attempt to commit murder, and, after explaining the substantive crime alleged, stated: "The intent for that crime is the specific intent to cause the death of another person, the [victim], as I previously defined for you the concept of specific intent and the elements of the crime of murder. . . . The concept of accessorial liability as I've explained to you applies to this charge."

During its deliberations, the jury sent a note to the trial court expressing its confusion between accessory liability and *Pinkerton* liability. The trial court then delivered supplemental instructions to the jurors in order to clear up their confusion. In these supplemental instructions, the trial court not only defined accessory liability again, but also reminded the jurors that it applied to counts three, five and eight.[14]

We begin with the well established standard of review governing claims of instructional impropriety. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the

mental state necessary for the commission of the crime charged . . . ."

[14] Specifically, the trial court delivered the following supplemental jury instructions, which provide in relevant part: "An accessory is charged and legally culpable if so found to be the same as the principal, in other words, the actor who did the crime, the acts constituting the crime, [because] it requires a finding of intentional aiding with the same state of mind or intent. . . . And that applies to counts three, five and eight, kidnapping first degree, assault first degree, and sexual assault in the first degree.

\* \* \*

"Accessory has to do with intentionally aiding someone else."

trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . *State* v. *Peeler*, 271 Conn. 338, 360–61, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005)." (Internal quotation marks omitted.) *State* v. *Wallace*, 290 Conn. 261, 272–73, 962 A.2d 781 (2009). "Moreover, as to unpreserved claims of constitutional [impropriety] in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Lawrence*, supra, 282 Conn. 179.

The defendant claims that, by referring back to its instructions on the specific intent required for accessory liability, the trial court improperly failed to elaborate on the specific intent required for each crime in which accessory liability was charged. He asserts that the jury was therefore left without an adequate understanding of the specific intent necessary to convict the defendant of accessory liability on the charges of attempt to commit murder, kidnapping in the first degree, assault in the first degree, and sexual assault in the first degree as charged in count eight. We disagree.

Although a trial court may elect to do so, it is not necessary for it to repeatedly instruct the jury on the same element, here, specific intent, for different crimes charged. As long as the jury has been fully instructed once, it is not reasonably possible that a jury is misled because it was not repeatedly instructed on that same element. See, e.g., *State* v. *Millan*, 290 Conn. 816, 824–25 n.7, 966 A.2d 699 (2009) (trial court's incorporation by reference of its earlier instruction regarding element of

crime, as well as its highlighting of similarity of elements between counts, reasonably would have led jury to conclude that element applied to both counts); *State* v. *Padua*, 73 Conn. App. 386, 402, 808 A.2d 361 (2002) ("[b]ecause the jury was fully instructed on the sale of a controlled substance in count one, we conclude that it is not reasonably possible that the jury was misled by not being repeatedly instructed on that same element in counts four and five"), rev'd in part on other grounds, 273 Conn. 138, 869 A.2d 192 (2005); cf. *State* v. *DeBarros*, 58 Conn. App. 673, 682–83, 755 A.2d 303 (where trial court repeatedly referenced improper jury instruction, "[i]t is reasonably possible that the jury was misled because the probable effect of the improper charge was that it guided the jury to an incorrect verdict"), cert. denied, 254 Conn. 931, 761 A.2d 756 (2000).

When we review the jury instruction as a whole, it is clear that the trial court gave a thorough instruction on the meaning of specific intent as well as two thorough instructions on accessory liability, but, for purposes of economy, did not repeat the same instructions relative to each of the charged crimes. The trial court repeatedly referred back to its earlier instructions and admonished the jury to evaluate all of the elements of each crime as charged in the information. The trial court also provided each juror with a written copy of the instructions, which enabled each of them to quickly and easily refer back to the court's instructions regarding each element and apply the instructions to each substantive crime. Accordingly, we conclude that it is not reasonably possible that the jury was misled by not being instructed repeatedly on the specific intent of accessory liability for each of the substantive crimes charged. We therefore also conclude that the defendant cannot prevail on this specific claim under the third prong of *Golding* because he has not established that

a constitutional violation clearly exists that clearly deprived him of a fair trial.

## IV

Finally, the defendant claims that his convictions for kidnapping in the first degree and conspiracy to commit kidnapping in the first degree should be reversed in light of this court's conclusion in *State* v. *Salamon*, supra, 287 Conn. 509. Specifically, the defendant asserts that our conclusion in *Salamon* compels trial courts to instruct jurors that in order to find the defendant guilty of the crime of kidnapping in the first degree, they must find that the defendant had intended to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the underlying charged crime. The defendant contends that this instruction necessarily requires that jurors also be instructed that they must determine whether the defendant's confinement, movement or detention of the victim was merely incidental to the underlying charged crimes, or whether the defendant's conduct was significant enough, in and of itself, to warrant independent prosecution for kidnapping. Because the trial court failed to instruct the jury as to either of these points in accordance with our decision in *Salamon*, the defendant claims that a new trial is warranted.

In response, the state claims that our conclusion in *Salamon* must be limited to situations in which the restraint inherent in the underlying charged crime is the same restraint that the state relies upon in pursuing a kidnapping conviction. The state notes that our decision in *Salamon*, as well as our subsequent decisions in *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), and *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008), is directed at eliminating any abuse that arises from a charge of kidnapping based on movement or confinement of the victim that is inherent in the com-

mission of an underlying charged crime, such as assault or sexual assault. Because in the present case, the kidnapping and other crimes charged were distinct both temporally and factually, the state asserts that our conclusion in *Salamon* is inapposite and that the trial court's jury instructions were thus proper. Additionally, the state claims that to the extent that there was instructional impropriety, it was harmless because no reasonable juror could conclude that in the present case, the restraint necessary to commit the kidnapping was merely incidental to the restraint inherent in the sexual assault and other crimes charged against the defendant, which occurred nearly four hours *after* the kidnapping had taken place. Although we agree with the defendant that the trial court improperly instructed the jury by failing to instruct them in a manner consistent with our decision in *Salamon*, we agree with the state that this instructional impropriety was harmless.

The following undisputed additional facts and procedural history are relevant to our resolution of the defendant's claims. As previously set forth herein, Mitchell picked up the victim from a friend's house in East Hartford at approximately 1:30 a.m., ostensibly to give her a ride home. The defendant accompanied Mitchell at all significant times during this incident. Approximately three hours later, when Mitchell drove the defendant to the rear of the gas station near Market Street, Mitchell and the defendant sexually and physically assaulted the victim, shot her multiple times and then left her for dead.

At trial, as previously mentioned herein, the defendant failed to file a request to charge. The trial court thereafter instructed the jury that, in accordance with § 53a-92 (a) (2) (A), "[a] person is guilty of kidnapping in the first degree when he abducts another person and restrains the person abducted with the intent to inflict physical injury upon him." The trial court explained to

the jury each of the elements of the crime, and made clear for the jury that kidnapping in the first degree is a specific intent crime.[15]

After the defendant was tried, convicted and sentenced, his attorney timely appealed to this court and filed his brief in January, 2008. The state filed its responsive brief in June, 2008. On July 16, 2008, the defendant moved for leave to file a supplemental brief challenging his conviction of kidnapping in the first degree and conspiracy to commit kidnapping in the first degree under our decision in *State* v. *Salamon*, supra, 287 Conn. 509. In his motion, the defendant conceded that he neither preserved the issue at trial nor raised it on appeal, but he pointed out that our decision in *Salamon* was not released until July 1, 2008, and that it could be applied to the present case because of the general rule that "judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending . . . ." (Citation omitted.) *Marone* v. *Waterbury*, 244 Conn. 1, 10–11,

---

[15] The relevant portion of the trial court's jury instructions regarding the charge of kidnapping in the first degree provided as follows: "For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: [t]hat the defendant abducted the [victim]; that the defendant unlawfully restrained the person he abducted, that's the [victim]; and that he did so with the intent to inflict physical injury upon the [victim].

"The term abduct means to restrain a person with intent to prevent their liberation by using or threatening to use physical force or intimidation. . . . The term restrain means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with their liberty by moving them from one place to another or confining them either in the place where the restraining commences or in a place to which they have been moved without consent. . . .

"The term intent relates to the condition of [the] mind of the person who commits the act, their purpose in doing it. The law, as I told you, recognizes two types of intent: [g]eneral and specific, as I previously described them for you. This crime is a specific intent crime. Specific intent is goal-oriented conduct. Specific intent refers to engaging in conduct to achieve a specific result."

707 A.2d 725 (1998). Over the state's objection, we granted the defendant's motion for leave to file a supplemental brief limited to the issue of "whether this court's decision in [*Salamon*] requires reversal of the defendant's convictions for kidnapping in the first degree in violation of . . . §§ 53a-92 (a) (2) (A) and 53a-8; and conspiracy to commit kidnapping in the first degree in violation of . . . §§ 53a-48 and 53a-92 (a) (2) (A)." We also granted the state permission to file a responsive supplemental brief.

We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. "Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . *State* v. *Dehaney*, 261 Conn. 336, 368, 803 A.2d 267 (2002), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003), quoting *State* v. *Ortiz*, 217 Conn. 648, 661–62, 588 A.2d 127 (1991). As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . *State* v. *Faria*, 254 Conn. 613, 634, 758 A.2d 348 (2000). Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible [impropriety] when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled. *State* v.

*Mason,* 186 Conn. 574, 585–86, 442 A.2d 1335 (1982)." (Internal quotation marks omitted.) *State* v. *Aviles,* 277 Conn. 281, 309–10, 891 A.2d 935, cert. denied, 549 U.S. 840, 127 S. Ct. 1081, 166 L. Ed. 2d 69 (2006).

Our resolution of the defendant's final claim is governed by our recent decisions in *State* v. *Salamon,* supra, 287 Conn. 509, *State* v. *Sanseverino,* supra, 287 Conn. 608, and *State* v. *DeJesus,* supra, 288 Conn. 418. Accordingly, before addressing the defendant's claim, we review briefly our decisions in these cases. In *Salamon,* "we reconsidered our long-standing interpretation of our kidnapping statutes, General Statutes §§ 53a-91 through 53a-94a." *State* v. *Sanseverino,* supra, 620. The defendant had assaulted the victim at a train station late at night, and ultimately was charged with kidnapping in the second degree in violation of § 53a-94, unlawful restraint in the first degree, and risk of injury to a child. *State* v. *Salamon,* supra, 515. "At trial, the defendant requested a jury instruction that, if the jury found that the restraint had been incidental to the assault, then the jury must acquit the defendant of the charge of kidnapping. [Id., 516]. The trial court declined to give that instruction. Id." *State* v. *Sanseverino,* supra, 621.

"[W]e [thus] reexamined our long-standing interpretation of the kidnapping statutes to encompass even restraints that merely were incidental to and necessary for the commission of another substantive offense, such as robbery or sexual assault. [*State* v. *Salamon,* supra, 287 Conn. 522–28]." *State* v. *Sanseverino,* supra, 287 Conn. 621. We ultimately concluded that "[o]ur legislature . . . intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to

prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *State* v. *Salamon,* supra, 542.

We explained in *Salamon* that "a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that had independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." Id., 547–48. "Applying this standard to the facts in *Salamon,* we concluded that, although the defendant had not been charged with assault, the judgment of conviction of kidnapping in the second degree had to be reversed and the case remanded for a new trial because the defendant was entitled to a jury instruction

explaining that a kidnapping conviction could not lie if the restraint was merely incidental to the assault. Id., 550." *State* v. *Sanseverino*, supra, 287 Conn. 624.

In *Sanseverino*, we relied on our opinion in *Salamon* to reverse the defendant's conviction of kidnapping in the first degree, reasoning that "although the question of whether kidnapping may stand as a separate offense is one for the jury . . . under the facts of the present case, no reasonable jury could have found the defendant guilty of kidnapping in the first degree on the basis of the evidence that the state proffered at trial." (Citation omitted.) Id. We explained that "[i]n the present case, the evidence clearly establishes that the defendant restrained [the victim] solely for the purpose of sexually assaulting her. Although we carefully have scrutinized the record, transcript, exhibits and briefs, we have found no evidence that the defendant restrained [the victim] to any greater degree than that *necessary* to commit the sexual assault." (Emphasis in original.) Id., 625. To that end, we reversed the defendant's conviction of kidnapping in the first degree and remanded the case to the trial court with direction to render a judgment of acquittal. Id., 641.

In *State* v. *DeJesus*, supra, 288 Conn. 434, we considered the appropriate remedy for the instructional impropriety identified in *Salamon* and *Sanseverino*, and concluded that in such situations, "the appropriate remedy . . . is to reverse the defendant's kidnapping conviction and to remand the case to the trial court for a new trial." Accordingly, we recognized the impropriety in our procedural conclusion in *Sanseverino*, and insofar as "the proper remedy in that case should have been a new trial," we overruled *Sanseverino*. Id., 437.

In the present case, we face the question of when the failure to instruct the jury in accordance with our decision in *Salamon* constitutes instructional impropri-

ety warranting a new trial. The defendant claims that although the trial court did instruct the jury as to the element of intent for the charge of kidnapping in the first degree; see footnote 15 of this opinion; it did not instruct the jury on the element of intent in accordance with the dictates of *Salamon*. The defendant contends that our conclusion in *Salamon* requires that, when a defendant is charged with both kidnapping and an offense separate from kidnapping, the jury must be instructed that in order to establish a kidnapping, "[t]he guiding principle is whether the [confinement or movement of the alleged kidnapping] was so much the part of another substantive crime that the substantive crime could not have been committed without such acts . . . ." (Internal quotation marks omitted.) *State* v. *Salamon*, supra, 287 Conn. 546. The state claims that to the extent that we conclude that there was instructional impropriety by the trial court, any such impropriety was harmless because it is clear beyond a reasonable doubt that the jury's verdict would have been the same in the absence of the alleged impropriety. Although we agree with the defendant that the trial court improperly instructed the jury, we agree with the state that this impropriety was harmless.[16]

It is well settled that an instructional impropriety that is constitutional in nature is harmful beyond a reasonable doubt, and, thus a reversible impropriety, "when it is shown that it is reasonably possible . . . that the jury [was] misled."[17] (Internal quotation marks

---

[16] Although *Salamon* was not decided until July 1, 2008, nearly two years after the trial in the present case, it is still applicable to our consideration of the defendant's appeal because of the general rule that "judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending . . . ." (Citation omitted.) *Marone* v. *Waterbury*, supra, 244 Conn. 10–11. The present appeal was filed in this court in January, 2008, and was pending at the time the *Salamon* decision was released.

[17] See part III of this opinion.

omitted.) *State* v. *Aviles*, supra, 277 Conn. 310; *State* v. *Mason*, supra, 186 Conn. 585–86; see also *State* v. *Lopez*, 280 Conn. 779, 822, 911 A.2d 1099 (2007) ("[i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury" [internal quotation marks omitted]); *State* v. *Floyd*, 253 Conn. 700, 714, 756 A.2d 799 (2000) (same); *State* v. *Smith*, 194 Conn. 213, 219, 479 A.2d 814 (1984) ("[a]n alleged defect in a jury charge which raises a constitutional question is reversible [impropriety] if it is reasonably possible that, considering the charge as a whole, the jury was misled"). In other words, "the test for determining whether a constitutional [impropriety] is harmless . . . is whether it appears beyond a reasonable doubt that the [impropriety] complained of did not contribute to the verdict obtained." (Internal quotation marks omitted.) *Neder* v. *United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); accord *State* v. *Gerardi*, 237 Conn. 348, 362, 677 A.2d 937 (1996).

On the basis of our review of the record in the present case, we conclude that the improper instruction was harmless because it is clear beyond a reasonable doubt that the impropriety did not contribute to the verdict. Specifically, the record does not contain evidence that could rationally lead to a contrary finding by the jury as to whether the defendant's restraint of the victim had been inherent in, or merely incidental to, the additionally alleged crimes. The state presented overwhelming evidence that the defendant and Mitchell had kidnapped the victim and had driven around Hartford and East Hartford with her for well over three hours before the defendant's alleged commission of any other crimes commenced. Specifically, between the time when Mitchell and the defendant picked the victim up in East Hartford, and when Mitchell parked the car

behind the gas station in Hartford and the sexual assault and the shooting of the victim occurred, the victim had been: (1) driven to a restaurant in downtown Hartford; (2) angrily questioned in the car about the whereabouts of her brother; (3) driven to her grandfather's house in Hartford; (4) driven to the home of Mitchell's mother in Hartford; and (5) driven to a nearby apartment complex. There is no question that the sexual assault and the attempt to commit murder of the victim did not occur until *after* Mitchell had driven himself, the defendant and the victim from the apartment complex to the closed gas station in Hartford at some point after 4:30 a.m. on August 23, 2003. The passage of this substantial period of time, which was uncontested by the defendant at trial, clearly shows the defendant's intent to prevent the victim's liberation for a longer period of time or to a greater degree than that necessary to commit the subsequent crimes. His restraint of the victim was *not* incidental to any additional offenses. Accordingly, we conclude that the trial court's failure to instruct the jury in accordance with our opinion in *Salamon* constitutes harmless impropriety.

The judgment is affirmed.

In this opinion the other justices concurred.