******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE ALEXANDRIA L. ET AL.*
(AC 37041)

Gruendel, Alvord and Borden, Js.

*Argued January 6—officially released March 3, 2015*

(Appeal from Superior Court, judicial district of New Britain, Juvenile Matters, Frazzini, J.)

*David J. Reich*, for the appellant (respondent mother).

*Elizabeth H. Bannon*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellee (petitioner).

*Lisabeth B. Mindera*, for the minor children.

*Opinion*

GRUENDEL, J. The respondent mother appeals from the judgment of the trial court finding her in contempt for failing to comply with the court's orders.[1] On appeal, the respondent argues that (1) the court lacked jurisdiction to enter or enforce orders directed toward the respondent, and (2) the court violated the respondent's constitutional rights when it entered and enforced the orders. We disagree and, accordingly, affirm the judgment of the trial court.

The following procedural history and factual findings of the court are relevant to our resolution of this appeal. The respondent is the mother of Alexandria L. and Nicholas L., two children who were alleged to have extensive histories of absenteeism from school. As a result of these allegations, in May, 2013, the petitioner, the Commissioner of Children and Families, filed a neglect petition against the parents. In January, 2014, the petitioner filed a motion for emergency relief pursuant to General Statutes § 46b-129 (c) (6)[2] and Practice Book § 34a-23,[3] requesting the court for an interim order requiring the parents to ensure that the children attend school. In February, 2014, the court held a hearing at which the petitioner and the parents presented evidence in regard to the petitioner's motion for emergency relief. After the hearing, the court granted the petitioner's motion, ordering the parents to ensure their children's school attendance and to provide medical documentation if their children were absent due to illness or medical condition. The court found that this order was in the best interests of the children.

At a subsequent hearing, held on April 9, 2014, the parties notified the court that they had reached an agreement. The agreement stated that if the parents continued to comply with the existing court order and their children attended therapy sessions, the petitioner would delay the neglect trial until July. The petitioner also notified the court that, if the parents complied with the agreement from April through July, it was their intention to withdraw the neglect petition, with the court's approval. The court then signed a transcript of the hearing, entering the agreement as a court order.

On May 15, 2014, the petitioner filed a motion for contempt alleging that the two children had incurred several absences from school and that no medical documentation had been provided excusing such absences. On June 17, 2014, the petitioner filed an amended motion for contempt. The amended motion alleged that since the April order, Alexandria had missed twenty-two days of school and that Nicholas had missed fourteen days of school. The parents, however, had only provided medical documentation excusing eight of Alexandria's absences and one of Nicholas's absences. Additionally, Alexandria had failed to attend a sched-

uled psychoeducational evaluation and, as a result, an assessment of her need for special education services was not conducted. The petitioner also filed a motion for attorney's fees and fines, requesting attorney's fees of $350 per hour for work conducted by their lead attorney, $150 per hour for work conducted by their supporting attorney, and fines of $150 for each day a child missed school without excuse.

On July 9, 2014, the court granted the motion for contempt and the motion for attorney's fees and fines. The court found that the parents had failed to comply with the court's prior orders and that their noncompliance was wilful. As a result, the court ordered the parents to pay a monetary fine of $100 for each day either child incurred an unexcused absence from school. The court also granted the motion for attorney's fees but requested the petitioner to submit affidavits supporting that request and allowed the parents thirty days to challenge the amount requested.[4] The respondent subsequently appealed.

I

The respondent first claims that the court lacked subject matter jurisdiction to enter the interim orders that were the subject of the motion for emergency relief and the motion for contempt. Specifically, the respondent argues that, under General Statutes § 46b-121 (b) (1),[5] the petitioner must first establish custody or authority over the minor children before the court may direct orders to the parents of such children. In response, the petitioner argues that the court had the independent authority to enter interim orders directed at the parents under General Statutes § 46b-129 (c) (6). We agree with the petitioner.

As a preliminary matter, we set forth the appropriate standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 532, 911 A.2d 712 (2006). In reviewing claims of statutory interpretation, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible

to more than one reasonable interpretation." (Internal quotation marks omitted.) *Fusco* v. *Austin*, 141 Conn. App. 825, 830–31, 64 A.3d 794 (2013).

In determining the power of the court to enter interim orders directed toward the parents, it is necessary to construe and harmonize various subsections of § 46b-129. General Statutes § 46b-129 (a) provides in relevant part: "[T]he Commissioner of Children and Families . . . having information that a child or youth is neglected, uncared for or abused may file with the Superior Court that has venue over such matter a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared for or abused within the meaning of section 46b-120 . . . ." General Statutes § 46b-120 (6) provides in part that "[a] child or youth may be found 'neglected' [if he or she] . . . (B) is being denied proper care and attention . . . educationally . . . ." Section 46b-129 (c) establishes, in part, that the "first hearing on a petition filed pursuant to subsection (a) of this section shall be held in order for the court to . . . (6) [m]ake any interim orders . . . that the court determines are in the best interests of the child or youth. The court, after a hearing pursuant to this subsection, shall order specific steps the commissioner and the parent or guardian shall take for the parent or guardian to regain or retain custody of the child or youth." When read together, §§ 46b-120 and 46b-129 vest the court with the authority to enter interim orders that are in the best interests of the children.

The respondent argues that the court lacked jurisdiction under § 46b-121 (b) (1), claiming that a court may make or enforce orders toward a parent only after the child has been committed to or otherwise comes into custody of the petitioner. See footnote 5 of this opinion. We do not construe that statute so restrictively.

First, the plain language of the statute authorizes orders directed at parents whenever their children are subject to the court's jurisdiction, regardless of whether the children have been committed to or are in the custody of the petitioner. Subsection (b) (1) of § 46b-121 provides the Superior Court with the authority to "make and enforce such orders directed to parents . . . as the court deems necessary or appropriate to secure the . . . proper care and suitable support of a child . . . *subject to the court's jurisdiction* or otherwise committed to or in the custody of the Commissioner of Children and Families." (Emphasis added.) "Our case law instructs that when a neglect petition has been filed, the Superior Court has jurisdiction pursuant to § 46b-129." *In re Joshua S.*, 260 Conn. 182, 194, 796 A.2d 1141 (2002). Thus, when the petitioner files a neglect petition, the court is vested with jurisdiction to hear the neglect proceeding pursuant to § 46b-129. Accordingly, under subsection (c) (6) of § 46b-129, the court is required to

first conduct a hearing in order to determine what, if any, interim orders are in the best interests of the children. Finally, under § 46b-121 (b) (3), the court is vested with contempt power for "the enforcement of the court's orders, in connection with any juvenile matter."

In the present case, the court conducted its first hearing in February, 2014. At the conclusion of that hearing, the court ordered the parents to ensure their children's attendance at school and to obtain a doctor's note if the children missed school due to a medical condition. The court made a finding that this order was in the best interests of the children. Once the court found that the parents were in wilful noncompliance of that order, it entered a finding of contempt. The court was statutorily authorized to both enter, as well as enforce, the interim orders directed to the respondent.

Additionally, the logic of the respondent's argument on appeal would render subsection (c) (6) of § 46b-129 without any meaning. If the court could not make or enforce any order against a parent until the child was committed to or in the custody of the petitioner, then it would be powerless to conduct a preliminary hearing to "order specific steps . . . the parent shall take for the parent . . . *to retain custody* of the child." (Emphasis added.) General Statutes § 46b-129 (c) (6). "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010); see also General Statutes 1-2z ("[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes"). Accordingly, we conclude that the court's February, 2014 interim orders, and subsequent enforcement of those orders, were properly authorized by statute.

II

The respondent next claims that the court's interim orders, and subsequent contempt finding, violated her constitutional right to make decisions for her children absent a finding of neglect. The respondent requests that, although she did not raise her claim before the trial court, her claim is of such constitutional significance as to warrant review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We disagree and conclude that the claim was waived.

"[W]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It

is enough if he knows of the existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]." (Citation omitted; internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 469, 10 A.3d 942 (2011). Waived claims fail under *Golding* because "in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the [party] of a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 448–49, 988 A.2d 167 (2009).

In February, 2014, the court entered interim orders requiring the parents to ensure their children's school attendance and to provide documentation if either child missed school due to a medical condition or illness. In April, 2014, the petitioner and the parents informed the court that they had reached an agreement. The parties agreed that the February orders would remain in place, both children would attend therapy sessions, and the parents would allow the children's doctors to meet with school administrators to determine what accommodations should be made by the school. In return, the petitioner agreed to postpone the neglect case until July and, if the parents were in compliance with the agreement from April to July, the petitioner would withdraw the neglect petition with the court's approval.

After hearing the proposed agreement, the court asked the attorney for the respondent, as well as the self-represented father, if they had anything they would like to say. The attorney stated: "I think it's an appropriate resolution. I mean, there's been give and take on each side and I think—I think it's—there's been a lot of discussion as far as what has to be established as far as recognizing that there are medical issues and as far as how to resolve those or document those, and I think this conversation between [the children's doctor] and the school will go a great distance to bring together the sides and resolve this." The father stated: "I just want to thank all the attorneys involved. I think it's great and I appreciate their willingness to work with us." The court then requested a transcript of the recited agreement and signed it as an order.

Although the parents initially opposed the court's interim orders, they later acquiesced to those same orders by incorporating them into their agreement. In doing so, the parents consented to, and expressed satisfaction with, the interim orders. *State* v. *Hampton*, supra, 293 Conn. 449 ("[i]n determining waiver, the conduct of the parties is of great importance" [internal quotation marks omitted]). The respondent could have, alternatively, challenged the court's orders by rejecting

the proposed agreement and proceeding directly to trial on the neglect petition. She chose, rather, to enter into an agreement that required compliance with the orders but could also have led to a complete withdrawal of the neglect petition. "[A] party may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him. . . . *Golding* is not intended to give an appellant a second bite at the apple." (Internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 480. Accordingly, we conclude that the respondent has waived her claim and, as a result, her request for review under *Golding* is unavailing.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] Although the trial proceedings involved both respondent parents, this appeal was brought by the respondent mother only. Hereafter, we refer to them as the parents and to her as the respondent.

[2] General Statutes § 46b-129 (c) provides in relevant part: "The preliminary hearing on the order of temporary custody or order to appear or the first hearing on a petition filed pursuant to subsection (a) of this section shall be held in order for the court to . . . (6) Make any interim orders, including visitation orders, that the court determines are in the best interests of the child or youth. The court, after a hearing pursuant to this subsection, shall order specific steps the commissioner and the parent or guardian shall take for the parent or guardian to regain or to retain custody of the child or youth . . . ."

[3] Practice Book § 34a-23 (a) provides: "Notwithstanding the above provisions, any party may file a motion for emergency relief, seeking an order directed to the parents, including any person who acknowledged before a judicial authority paternity of a child born out of wedlock, guardians, custodians or other adult persons owing some legal duty to the child, as deemed necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child or youth before this court for the protection of the child. Such orders include, but are not limited to, an order for access to the family home, an order seeking medical exam or mental health exam or treatment of the child, an order to remedy a dangerous condition in the family or foster home, an order to provide or to accept and cooperate with certain services, or an order prohibiting the removal of the child from the state or the home. Such motions may be heard at the next short calendar; however, if the exigencies of the situation demand, the judicial authority may order immediate ex parte relief, pending an expeditious hearing."

[4] The court later made a determination of the attorney's fees, ordering the parents to pay the petitioner $10,074.20. The propriety of this order is not an issue in this appeal.

[5] General Statutes § 46b-121 (b) (1) provides in relevant part: "In juvenile matters, the Superior Court shall have authority to make and enforce such orders directed to parents . . . as the court deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child or youth subject to the court's jurisdiction or otherwise committed to or in the custody of the Commissioner of Children and Families. . . ."