******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PAUL DAVIS
(AC 37582)

Beach, Alvord and Mullins, Js.

*Argued September 22, 2015—officially released March 1, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Dewey, J.)

*Mary A. Beattie*, assigned counsel, for the appel-

lant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *John F. Fahey*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Paul Davis, appeals from the judgment of conviction of accessory to murder in violation of General Statutes §§ 53a-54a (a) and 53a-8 (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), and attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a).[1] On appeal, the defendant claims that (1) there was insufficient evidence to sustain his conviction of attempt to commit murder because he was charged via the information only as a principal and the trial court did not instruct the jury that it could find him guilty as an accessory on that charge, (2) the court improperly instructed the jury that it was not necessary for the state to prove that the defendant intended to kill the victim to find him guilty of accessory to murder, and (3) the court improperly instructed the jury on the substantial step requirement of attempt to commit murder.[2] We affirm the judgment of the trial court.

The following facts, which reasonably could have been found by the jury, are relevant to our consideration of the issues on appeal. The defendant was a member of a gang in Hartford. On May 28, 2006, in retaliation for a shooting that occurred earlier that day in which another member of the defendant's gang was shot, the defendant, Ackeem Riley and Dominique Mack discussed conducting a drive-by shooting in the Nelton Court area of Hartford. The trio had no specific victim intended.

The defendant drove himself, Riley and Mack toward the Nelton Court area in a car he had borrowed. Riley was armed with a nine millimeter Glock handgun. Mack was armed with a nine millimeter Taurus. As the defendant drove, he, Riley and Mack saw a group of children at the corner of Elmer and Clark Streets. Riley and Mack fired at least seventeen shots from their handguns at the group, striking two boys. One of the victims, Kerry Foster, Jr., a fifteen year old boy, was hit by five bullets, resulting in his death. The other victim, Cinque Sutherland, a fourteen year old boy, was hit by three bullets, resulting in serious injury.

After the shooting, the defendant, Riley and Mack fled the scene and left the car on Guilford Street. From there, they summoned a cab to take them to 140 Oakland Terrace. Riley, Mack and another man later returned to the vehicle and set it on fire.

On June 7, 2006, the defendant agreed to speak with members of the Hartford Police Department, and he provided them with information about the shooting. He told the officers about the planning of the shooting, the types of firearms used and where they could be found. He also told them how the vehicle used in the shooting later was set on fire. The defendant, however, did not

disclose his involvement in the shooting until almost three years later, in May, 2009, when he again spoke to the police and provided a written statement.

After providing a written statement to the police, the defendant was charged with and later convicted of accessory to murder, conspiracy to commit murder, and attempt to commit murder. See also footnote 1 of this opinion. The court sentenced him to a total effective term of 100 years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that there was insufficient evidence to sustain his conviction of attempt to commit murder. He argues that, as to this count, the state charged him, via a long form information, only as a principal, that the court instructed the jury only on the theory of principal liability, and that the state argued that the defendant was a principal, but that there was no evidence that he was the shooter or that he had a gun during the commission of this crime. He concedes that there was sufficient evidence that he acted as an accessory, but argues, nonetheless, that his conviction cannot be sustained under these circumstances.

The state responds that our role on appeal is to review the charging document and the evidence, and then assess whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt. The state contends: "Because the state charged the defendant generally as to the [attempt to commit] murder count, the defendant was on notice that he could be convicted as either a principal or an accessory." Moreover, the state argues, although the instructions of the trial court are not relevant when considering the sufficiency of the evidence, the trial court's instructions in this case, read as a whole, permitted the jury to find the defendant guilty of attempt to commit murder as an accessory.

The defendant, in rebuttal, argues that, although a defendant who is charged as a principal can be convicted as an accessory, this is true only if he has notice that he was being charged as an accessory and the jury is instructed that it can find him guilty on the theory of accessorial liability. He argues that, here, he had no notice that he could be convicted as an accessory when the state charged him as a principal, the state never requested an instruction on accessorial liability as to this count, the state argued to the jury that the defendant was a principal, and the court never instructed the jury that it could find him guilty as an accessory to attempt to commit murder. He argues that, because the jury found him guilty of the crime of attempt to commit murder with no evidence that he acted as a principal, and no instruction that it could find him guilty as an accessory, we, on appeal, must find the evidence insuffi-

cient, overturn his conviction, and order a judgment of acquittal. We are not persuaded by the defendant's arguments.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We assume that the fact finder is free to consider all of the evidence adduced at trial in evaluating the defendant's culpability, and presumably does so, regardless of whether the evidence is relied on by the attorneys. . . . When the state advances a specific theory of the case at trial, however, sufficiency of the evidence principles cannot be applied in a vacuum. Rather, they must be considered in conjunction with an equally important doctrine, namely, that the state cannot change the theory of the case on appeal. . . .

"The theory of the case doctrine is rooted in principles of due process of law. . . . In *Dunn* [v. *United States*, 442 U.S. 100, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979)] the United States Supreme Court explained: To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused. . . . [A]ppellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial. . . .

"[I]n order for any appellate theory to withstand scrutiny under *Dunn*, it must be shown to be not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt that, upon [review of] the principal stages of trial, can be characterized as having been presented in a focused or otherwise cognizable sense. . . . Thus, in conducting our analysis . . . we must analyze the evidence adduced at trial to determine whether, when considered in light of the state's theory of guilt at trial, the state presented sufficient evidence . . . .

"We note at the outset that . . . the theory of the case principle binds not only the state, but appellate courts as well." (Citations omitted; internal quotation marks omitted.) *State* v. *Carter*, 317 Conn. 845, 853–55, 120 A.3d 1229 (2015).

In count four of the long form information, the state charged the defendant as follows: "The said Senior Assistant State's Attorney further accuses [the defen-

dant] of the crime of ATTEMPT TO COMMIT MURDER in violation of Connecticut General Statutes § 53a-49 (a) (2) [and] 53a-54a (a), and alleges that, on or about May 28, 2006, at or near 50–52 Clark Street, Hartford, CT, at approximately 11:24 p.m., the defendant, acting with the mental state required for the commission of murder, intentionally did an act constituting a substantial step in a course of conduct planned to culminate in the commission of the crime.”

A

The defendant concedes that the evidence was sufficient to establish his guilt of attempt to commit murder as an accessory. The defendant argues, nonetheless, that this case is unique because, even if he was on notice by virtue of the information and the evidence that he could be convicted as an accessory, the state’s theory of the case was that he was a principal, and, furthermore, the court never instructed the jury that it could find him guilty as an accessory to the attempt to commit murder charge.

Specifically, he argues: “At trial, the court instructed the jury on count four solely on the theory of principal liability. This theory was confirmed by the state, which told the jury during its closing argument that it was charging the defendant as a principal on the attempt charge (‘with respect to the attempted murder count . . . [the defendant] is, in fact, the principal’).” (Footnote omitted.) The defendant also points out that the state, on appeal, makes no claim that the defendant was a principal on this charge. Accordingly, he argues, the evidence was insufficient to support a guilty verdict in light of the state’s theory of the case and the court’s instruction to the jury, namely, that the defendant was a principal on the attempt to commit murder charge.

We are not persuaded that the state’s theory of the case involved the defendant acting solely as a principal on the charge of attempt to commit murder. Rather, our view of the state’s presentation of evidence and its closing argument leads us to conclude that the state’s theory of the case was that the defendant aided Riley and Mack in their attempt to commit the murder of Sutherland because the defendant agreed to participate in the shooting of anyone outside the Nelton Court area and then drove the car out of which Riley and Mack, as principals, shot Foster and Sutherland.

We recognize that the state argued during its closing argument: “Now, with respect to count three, the conspiracy, of which [the defendant] was a principal, and with respect to the attempted murder count, where he took a substantial step, in those two, he is, in fact, the principal. With respect to . . . alternative methods of liability, they apply in reality to the murder, and therefore, from the murder to the capital felony.” Nevertheless, a thorough reading of the entirety of the state’s

closing argument to the jury reveals that the prosecutor never argued that the defendant was the shooter in this case, and he always proceeded under the theory that the defendant conspired with Mack and Riley to conduct a drive-by shooting, that the defendant drove the car for Mack and Riley, and that Mack and Riley fired the weapons. We acknowledge that the prosecutor's closing argument, at times, was inartful, and, perhaps, could be read as proposing that the defendant was a principal on the attempt to commit murder charge because he acted as an accomplice. The prosecutor certainly argued, however, that the defendant was the driver of the vehicle in the drive-by shooting, and that the defendant intentionally aided Mack and Riley in their shooting of the victim. He never once alleged that the defendant actually pulled the trigger.

Indeed, the state told the jury, inter alia, that it was "not alleging that . . . [the defendant] pulled any— either of the triggers, which resulted in the gunfire that caused the death of Kerry Foster, Jr., and the injury to Cinque Sutherland. The law allows for that. The law allows for alternative methods where a defendant can be guilty if certain factors are met. Thus—I will talk about two particular methods; one is accessorial liability and one is what is called the *Pinkerton* doctrine[3] . . . ." (Footnote added.) The state also argued: "I want to talk about attempt as it relates to the charges. Again, acting with the kind of mental state required for the commission of the crime, here, the intent to cause— intent to commit a murder, the defendant intentionally did an act constituting a substantial step in a course of conduct planned to culminate in the commission of that crime. In this count, attempted murder applies to the shooting of Cinque Sutherland.

"So, what were the substantial steps that [the defendant] took? You know from the evidence that he drove a car over to Clark Street, more specifically, down Clark Street, with two passengers . . . who had loaded nine millimeter firearms, so they could retaliate in some gang war, and, instead, shot at two uninvolved individuals [namely, Foster and Sutherland]. [The defendant] drove slowly down the street allowing numerous shots to be fired [by] the gunm[e]n at Sutherland and Foster in an attempt to accomplish the murder or murders."

The state then discussed conspiracy, *Pinkerton*, and accessorial liability. In relevant part, the state argued: "Next, alternatively, is accessorial liability. So, in addition to *Pinkerton* liability, a person is guilty of a crime when they act either as a principal or an accessory. A person acts as an accessory when, again, having the mental state required for murder . . . he intentionally aids another.

"If you were talking about simply accessory versus principal as the alternative methods, there would be no need for unanimity. . . . But, when you're talking

about the difference between accessorial liability and *Pinkerton* liability, you need to be unanimous as to either *Pinkerton* liability, that you all agree he's guilty under *Pinkerton*, you can all agree he's guilty as an accessory, or, quite frankly, as the state would suggest, the evidence shows in this case, he's guilty both ways, and that is acceptable as well.

"Now, how did he—and before I jump off that last line, how did he intentionally aid here? Well, I think the evidence becomes clear, [by] . . . acting as the approach drive[r] and the getaway driver in this case, [the defendant] intentionally aided . . . Mack and . . . Riley in accomplishing the shooting of and ultimately the murder of Kerry Foster and the shooting of Cinque Sutherland."

We conclude that the state's closing argument was consistent with its presentation of evidence. The state sought to establish that the defendant conspired with Riley and Mack to participate in a drive-by shooting and that the defendant drove the car while Riley and Mack shot the victims, resulting in one death and one serious injury. The state's theory of the case, therefore, was that the defendant aided Riley and Mack while they shot the victims, killing Foster and attempting to kill Sutherland, and the state has remained consistent in its theory.

B

We next examine whether the court's instructions to the jury reasonably permitted the jury to find the defendant guilty of attempt to commit murder as an accessory.

Although the state did not specifically charge the defendant as an accessory to the crime of attempt to commit murder in the long form information, our general rule is that "a defendant may be convicted as an accessory even though he was charged only as a principal as long as the evidence presented at trial is sufficient to establish accessorial conduct." (Internal quotation marks omitted.) *State* v. *James*, 247 Conn. 662, 679, 725 A.2d 316 (1999); see *State* v. *Vasquez*, 68 Conn. App. 194, 215, 792 A.2d 856 (2002) (defendant charged with crime is on notice that he may be convicted as accessory to that crime). "Therefore, the fact that the defendant was not formally charged as an accessory does not preclude his being convicted as such . . . and a defendant who is charged with an offense should be on notice that he may be convicted as an accessory." (Internal quotation marks omitted.) *State* v. *VanDeusen*, 160 Conn. App. 815, 848–49, 126 A.3d 604, cert. denied, 320 Conn. 903,      A.3d      (2015).

Despite our general rule, however, "a reviewing court may not uphold a conviction premised on accessorial liability if the court foreclosed the jury from basing its guilty verdict on that theory. See *State* v. *Faulkner*, 48

Conn. App. 275, 277, 709 A.2d 36 (1998) (noting in review of sufficiency of evidence to support conviction as accessory that trial court instructed jury as to both principal and accessorial liability); *State* v. *Channer*, 28 Conn. App. 161, 166, 612 A.2d 95 (noting in review of sufficiency of evidence that reviewing court limited to considering whether evidence supported finding that defendant acted as principal because trial court did not instruct jury as to accessorial liability), cert. denied, 223 Conn. 921, 614 A.2d 826 (1992)." *State* v. *Holley*, 160 Conn. App. 578, 592,     A.3d     , cert. granted on other grounds, 320 Conn. 906,     A.3d     (2015); see *State* v. *VanDeusen*, supra, 160 Conn. App. 849 ("in order to be convicted as an accessory, it is at least necessary for the court to have instructed the jury on principles of accessorial liability" either generally or as to each relevant offense).

The state argues that the court's instructions do not bear on the sufficiency of the evidence, but, in the alternative, it argues that the court's instructions in the present case properly advised the jury on the theory of accessorial liability. The defendant argues that the court's accessorial liability instructions could not be read to relate to the attempt to commit murder count. We conclude that the court's instructions properly guided the jury on the issue of accessorial liability.

In its final instructions to the jury, the court gave an instruction on accessory liability during its charge on count three of the information, conspiracy to commit murder, which also included its definition and instruction concerning the crime of murder. The court first defined the elements of murder, and next proceeded to define the elements of conspiracy. The court then discussed the lesser included offense of conspiracy to commit assault in the first degree. Next, the court instructed: "Now, our next offense is alternative theory of liability of murder. This is count two in the information. The defendant is charged in count two with the murder of Kerry Foster, even though the state is not alleging that the defendant directly participated in the commission of the murder. He is charged as an accessory. The defendant is also charged in count three—two, with conspiracy to commit murder—in count three. That's right. This is count three, conspiracy to commit murder.

"I have provided the elements of the crime of murder previously. However, with respect to intent in this particular count, it is not necessary for a conviction of murder that the state prove that the defendant intended to kill Kerry Foster. A person is criminally liable for a criminal act if he directly commits it or if he is an accessory in the criminal act of another. The statute defining accessorial liability read[s] in pertinent part as follows: a person, acting with the mental state required for the commission of an offense, who solicits, requests,

importunes, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

"This statute does not connect those five acts specified with the word 'and' but separates them by the word 'or.' A person is an accessory if he solicits or requests or importunes or intentionally aids another person to engage in conduct that constitutes an offense. Solicit means: to order or direct; importune means: to demand or urge; aid means: to assist, help, or support. A person acts intentionally with respect to a result when his conscious objective is to cause such result. Intentional aid, therefore, means: to act in any manner, the conscious objective of which is to assist, help, or support. Specific intent is required.

"If the defendant did any of these things as specified in the statute, he is guilty of murder as though he had directly committed it or participated in its commission. To establish the guilt of a defendant as an accessory for assisting in the criminal act of another, the state must prove criminality of the intent and community of the unlawful purpose. That is, for the defendant to be guilty as an accessory, it must be established that he acted with the mental state necessary to commit murder and that in furtherance of that crime, he solicited, requested, commanded, importuned, or intentionally aided the principal to commit murder.

"Evidence of mere presence as an inactive companion, or passive acquiescence, or the doing of innocent acts, which, in fact, aid in the commission of a crime, is insufficient to find the defendant guilty as an accessory under the statute. Nevertheless, it is not necessary to prove that the defendant was actually present or actively participated in the actual commission of the crime of murder."

The court then instructed the jury on *Pinkerton* liability, interweaving an instruction on the conspiracy count with an instruction on the accessory to murder count. See footnote 3 of this opinion. Following its *Pinkerton* instruction, the court told the jury: "If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of accessory to the murder of Kerry Foster, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, you shall find the defendant not guilty.

"Your possible verdicts as regards to this count would be not guilty, guilty as an accessory, guilty as a coconspirator, or guilty as to both an accessory and a coconspirator. The verdict must be unanimous. You must unanimously agree on which of these four verdicts will be returned.

"If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of accessory to murder, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, then you shall find the defendant not guilty."

The court went on to instruct the jury on the lesser included offense of manslaughter in the first degree, and told the jury that it could find the defendant guilty as either an accessory or under *Pinkerton* liability. The court then proceeded to instruct the jury on count one, accessory to capital felony, explaining to the jury that it could find the defendant guilty under either theory of liability.

Finally, the court instructed the jury on count four, attempt to commit murder, and its lesser included offenses. Critically, in this instruction, the court, twice, specifically referred the jury back to the court's instructions on murder, which incorporated its instruction on accessorial liability. The entirety of that instruction is as follows: "Finally, attempt to commit murder. The defendant is charged in count four with attempt to commit murder. I have already defined murder. The statute defining attempt reads in pertinent part as follows: a person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for the commission of the crime, he intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt:

"Element one is intent. The first element is that the defendant had the kind of mental state required for the commission of the crime of murder. The intent for that crime is the specific intent to cause murder. Please refer to the definition of murder.

"And element two is conduct. The second element is that the defendant intentionally engaged in conduct that would constitute the crime of murder if the attendant circumstances were as he believed them to be. There must be a substantial step toward the completion of the criminal act.

"In conclusion, if upon all the evidence you conclude beyond a reasonable doubt that the defendant has formed in his mind the intention to commit murder as it has been defined for you, you must next consider whether he intentionally did anything that would constitute the crime if the circumstances were as he believed them to be. In other words, the state must prove both intent and conduct beyond a reasonable doubt to obtain a conviction.

"If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of attempt to commit murder, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, you shall then find the defendant not guilty.

"If you unanimously find the defendant not guilty of the crime of attempt to commit murder, you shall then consider the lesser offense of attempt to commit assault in the first degree. Do not consider the lesser offense unless and until you have unanimously acquitted the defendant of the greater offense, attempt to commit murder.

"And attempted assault in the first degree. I have already defined the concept of attempt, and I've also provided the definition of assault in the first degree. Please refer back to those.

"If, upon all the evidence, you conclude beyond a reasonable doubt that the defendant has formed in his mind the intention to commit assault in the first degree as it has been defined for you, you must next consider whether he intentionally did anything that would constitute the crime if the circumstances were as he believed them to be, that is, find a substantial step toward the completion of the crime. In other words, the state must prove both intent and conduct beyond a reasonable doubt to obtain a conviction.

"If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of attempt to commit assault in the first degree, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, you shall then find the defendant not guilty."[4]

The defendant claims that, when reviewing the court's instructions, it is clear that the court did not instruct the jury that it could find him guilty as an accessory to attempt to commit murder. He argues that there was no evidence that he was a principal, and that, without an instruction to the jury telling it that the defendant could be guilty as an accessory on that charge, the jury was foreclosed from finding guilt on that alternative theory. We disagree that the jury was foreclosed from finding guilt on a theory of accessorial liability on the charge of attempt to commit murder.

In this case, the evidence established that the defendant conspired with Riley and Mack to participate in a drive-by shooting, and the defendant drove the vehicle while Riley and Mack shot the victims, killing Foster and attempting to kill Sutherland. This evidence was consistent with the state's theory of the case. During its final instructions to the jury, the court gave an instruction on accessorial liability while charging the

jury on the crime of conspiracy to commit murder. During that portion of its final instructions, the court also included its definition and instruction on murder. When the court got to the portion of its instructions concerning attempt to commit murder, the court twice referred the jury back to its instructions on murder, stating, "I have already defined murder," and, "[p]lease refer to the definition of murder."

As set forth in complete detail previously in this opinion, the court fully instructed the jury on accessorial liability during its instruction on murder. The defendant was accused of having murdered Foster, acting as an accessory. Thus, in this particular case, the accessory instruction given during the court's instruction on murder necessarily was part of its definition of murder. When, during the instruction on attempt to commit murder, the court instructed the jury to refer back to the murder instruction, it is likely that the jury understood that the accessorial liability portion of the instruction applied to the attempt to commit murder charge, as well. Compare *State* v. *Holley*, supra, 160 Conn. App. 595 (although court did not distinctly instruct jury that it could find defendant guilty of robbery in first degree as accessory, as it had done in its instruction on burglary in the first degree, reading entirety of court's instruction, in light of evidence presented, leads to conclusion that court submitted robbery count on theory of accessorial liability, as well) and *State* v. *Foshay*, 12 Conn. App. 1, 26–27, 530 A.2d 611 (1987) (accessorial liability instruction generally applied to both burglary and larceny charges although not set forth in both) with *State* v. *VanDeusen*, supra, 160 Conn. App. 848 n.20 (court's accessorial liability instruction applied to different charge and no general instruction that would apply to all counts). Accordingly, we conclude that the jury was not foreclosed from considering the defendant's guilt under the theory of accessorial liability in relation to the charge of attempt to commit murder.

## II

The defendant next claims, with respect to the accessory to murder charge, that the court improperly instructed the jury that it was not necessary for the state to prove that he intended to kill the victim to find him guilty of accessory to murder. The state contends that the defendant waived this claim. We agree with the state and conclude that, pursuant to *State* v. *Kitchens*, 299 Conn. 447, 480, 10 A.3d 942 (2011) ("Connecticut courts have deemed a claim of instructional error implicitly waived when the defense failed to take exception to, and acquiesced in, the jury instructions following one or more opportunities to review them"), the defendant waived any claim regarding the court's instructions on the accessory to commit murder charge.

"Whether a defendant waives the right to challenge jury instructions is a question of law over which we

exercise plenary review. . . . Relevant to the issue of waiver in the context of jury instruction claims, our Supreme Court stated that when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case. . . . To determine whether . . . the defendant implicitly waived his claim of instructional error, we . . . turn to a close examination of the record and the particular facts and circumstances of [the] case." (Citations omitted; internal quotation marks omitted.) *State* v. *Bialowas*, 160 Conn. App. 417, 426, 125 A.3d 642 (2015).

The following additional facts support our conclusion that the defendant waived his claim of instructional error. At the March 11, 2013 charging conference, which took place on the record, the court indicated that it had sent its proposed final jury instructions to counsel via e-mail the day before. It stated that the document was thirty-five pages in length, and it then confirmed that the clerk had a copy of those instructions for the record. During the conference, all parties indicated that they had received copies of the proposed instructions via e-mail and that they had reviewed them. Both attorneys also had e-mailed the judge regarding the proposed instructions, and copies of these e-mails were made part of the record. In an e-mail, defense counsel had indicated that he wanted a particular instruction on missing evidence, but that, otherwise, "the proposed jury instructions, as written [were] fair to both parties." The prosecutor indicated that he was taking an exception to certain aspects of the proposed instructions.[5]

During the charging conference, the court carefully went over each page of the proposed instructions, giving counsel an opportunity to indicate any objections or to make suggestions. As to the court's proposed instruction on the intent element of accessory to murder, defense counsel voiced no objection at the charging conference, and the language regarding intent of which the defendant now complains was unchanged from the court's e-mailed instructions.[6]

The defendant concedes that his claim of instructional error is not preserved, but he, nonetheless, asks that we conduct a plain error analysis.[7] See Practice Book § 60-5. This court, having determined that the waiver of an instructional claim thwarts plain error review; see *State* v. *Bialowas*, supra, 160 Conn. App. 430 (defendant's waiver precludes application of plain

error doctrine); *State* v. *Jackson*, 159 Conn. App. 670, 678, 123 A.3d 1244 (2015) (same); *State* v. *Fuller*, 158 Conn. App. 378, 390–91, 119 A.3d 589 (2015) (same); declines the defendant's invitation to conduct a plain error analysis here.

Following our examination of the record in this case, we conclude that the defendant has waived his claim of instructional error, and, in accordance with our recent case law, we further conclude that such a waiver precludes us from finding plain error on appeal. See *State* v. *Kitchens*, supra, 299 Conn. 474 n.18 ("a valid waiver precludes a finding that a jury instruction constitutes plain error because a valid waiver means that there is no error to correct").

III

The defendant also claims that the court, in violation of his right to due process, improperly instructed the jury on the substantial step portion of the attempt statute, § 53a-49,[8] when reading its instructions on the crime of attempt to commit murder.[9] The state responds that any error in the court's substantial step instruction was harmless beyond a reasonable doubt. We agree with the state.

"An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . In performing harmless error analysis, we keep in mind that [i]n determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . .

"When a jury is misinstructed on an essential element of a crime and a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. . . . Further, a jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 166–67, 869 A.2d 192 (2005); see also *State* v. *Johnson*, 316 Conn. 45, 58, 111 A.3d 436 (2015). Assuming, without deciding, that the court's instructions were infirm in this instance, we conclude, nevertheless, that

the state has established that any purported error was harmless beyond a reasonable doubt.

In the present case, the defendant concedes that the evidence was sufficient to prove that he was guilty of the crime of attempt to commit murder, acting as an accessory. The evidence clearly established that the defendant conspired with Riley and Mack to participate in a drive-by shooting; the defendant drove the vehicle while Riley and Mack shot the victims, killing Foster and attempting to kill Sutherland. The jury found the defendant guilty of conspiracy and accessory to murder on the basis of this evidence. It is beyond any reasonable doubt that this same evidence established the defendant's guilt on the charge of attempt to commit murder. Accordingly, the interest in fairness has been satisfied. See *State* v. *Padua*, supra, 273 Conn. 167; see also *State* v. *Johnson*, supra, 316 Conn. 58.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also was charged with, but acquitted of, accessory to capital felony in violation of General Statutes (Rev. to 2005) § 53a-54b (8) and § 53a-8 (a). General Statutes § 53a-54b is now known as murder with special circumstances.

[2] The defendant briefed two additional claims, namely, that the state produced insufficient evidence of all crimes charged and that harmful error occurred because the jury was instructed that it could find him guilty on counts two, three, and four on the basis of one witness' testimony. He specifically abandoned these claims in his reply brief. We also confirmed his abandonment of these claims for the record during oral argument before this court.

[3] "[U]nder the *Pinkerton* doctrine . . . a coconspirator's intent . . . may be imputed to a defendant who does not share that intent . . . . The rationale for liability under this theory is that [w]hen the defendant has played a necessary part in setting in motion a discrete course of criminal conduct . . . he cannot reasonably complain that it is unfair to hold him vicariously liable . . . for the natural and probable results of that conduct that, although he did not intend, he should have foreseen. . . .

"[T]o be guilty as an accessory one must share the criminal intent and community of unlawful purpose with the perpetrator of the crime and one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it. . . . Thus, [u]nlike coconspirator liability under *Pinkerton* . . . accessorial liability pursuant to § 53a-8 requires the defendant to have the specific mental state required for the commission of the substantive crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Bennett*, 307 Conn. 758, 764–65, 59 A.3d 221 (2013), discussing *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946).

We note that in the present case, although the state argued the *Pinkerton* doctrine as one of the alternative theories of liability for the capitol felony and murder charges, and the court instructed the jury on this doctrine, no mention of *Pinkerton* liability is present in the long form information.

Our Supreme Court has stated that a trial court commits error when it instructs on this theory when the theory is not present in the charging document; nevertheless, the claim of error may be abandoned by the defendant's failure to raise it. See *State* v. *Hampton*, 293 Conn. 435, 446 n.9, 988 A.2d 167 (2009).

In *Hampton*, the parties, during a charging conference, discussed with the trial court that, on count eight of the information, the defendant "could be found liable as a principal, as an accessory, or under the *Pinkerton* doctrine of vicarious liability." Id. In response, the "trial court . . . charged the jury in accordance with this discussion. This, however, was incorrect. Count eight of the information alleged only that the defendant had acted as an accessory by aiding [another] in sexually assaulting the victim. Accordingly, the trial court's jury instruction as to count eight was inconsistent with the crime charged in the information. Although [t]he trial court cannot by its instruction change the nature of the crime charged in the information . . . it is significant that neither the state nor the defendant took exception

to this instruction at trial, and that, on appeal, the defendant has not challenged this specific aspect of the instruction. We therefore treat this claim as abandoned." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id.

Likewise, here, because the defendant has not raised this issue on appeal, we deem it abandoned. See id.

[4] Nowhere in the information or in the court's final instructions was there mention that Cinque Sutherland is the victim in the attempt to commit murder charge. The state did argue that Sutherland was the victim in this charge, and there was evidence to substantiate that argument. The defendant does not claim any error regarding the failure to name Sutherland in the information or in the court's final instructions.

[5] The prosecutor's exceptions, however, are not relevant to the claims the defendant is making on appeal.

[6] Specifically, the court's proposed instruction, sent to counsel via e-mail, provided in relevant part: "The defendant is charged in count two with the murder of Kerry Foster, even though the state is not alleging that the defendant directly participated in the commission of the murder. He is charged as an accessory. The defendant is also charged, in count three with conspiracy to commit murder.

"I have provided the elements of the crime of murder previously. However, with respect to intent in this particular count, it is not necessary for a conviction of murder that the state prove that the defendant intended to kill Kerry Foster."

During trial, the court's actual instruction to the jury on this count provided in relevant part: "Now, our next offense is alternative theory of liability of murder. This is count two in the information. The defendant is charged in count two with the murder of Kerry Foster, even though the state is not alleging that the defendant directly participated in the commission of the murder. He is charged as an accessory. The defendant is also charged in count three . . . with conspiracy to commit murder . . . .

"I have provided the elements of the crime of murder previously. However, with respect to intent in this particular count, it is not necessary for a conviction of murder that the state prove that the defendant intended to kill Kerry Foster."

Thus, the proposed instruction, which counsel reviewed and accepted, was virtually identical to the instruction given to the jury.

[7] For preservation purposes, the defendant also requested review of his claim of instructional error under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), in the event that our Supreme Court overrules *Kitchens*. We note that, "[i]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Holness*, 289 Conn. 535, 543, 958 A.2d 754 (2008).

[8] General Statutes § 53a-49 provides: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of

the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[9] The court's *proposed instructions* on attempt to commit murder, sent to counsel via e-mail, provided: "The defendant is charged in count four with attempt to commit murder. I have already defined murder. The statute defining attempt reads in pertinent part as follows:

"[A] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for the commission of the crime, he intentionally engages in conduct which would constitute the crime in attendant circumstances were as he believes them to be.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt:

"Element 1—Intent. The first element is that the defendant had the kind of mental state required for commission of the crime of murder. The intent for that crime is the specific intent to cause murder.

"Element 2—Conduct. The second element is that defendant intentionally engaged in conduct that would constitute the crime of murder if attendant circumstances were as he believed them to be. Please refer to the definition of murder.

"Conclusion. If, upon all the evidence, you conclude beyond a reasonable doubt that the defendant had formed in his mind the intention to commit murder as it has been defined for you, you must consider whether he intentionally did anything that would constitute the crime if the circumstances were as he believed them to be. In other words, the state must prove both intent and conduct beyond a reasonable doubt to obtain a conviction.

"If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of attempt to commit murder, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state had failed to prove beyond a reasonable doubt any of the elements, you shall then find the defendant not guilty."

The court's actual instructions to the jury on the attempt to commit murder count are set forth fully in part I B of this opinion. We note that the only substantive change in the actual instructions from those proposed by the court, and to which the defendant agreed, was the court's addition of the sentence that reads: "There must be a substantial step toward the completion of the criminal act."

To the extent that the defendant argues, in part, that the court improperly gave an instruction under § 53a-49 (a) (1), the attendant circumstances portion of the attempt statute, we note that the court's proposed instructions contained that language, and that the defendant raised no objection to the language, thereby waiving any claim of error. Nevertheless, the defendant also argues that the court's instruction on § 53a-49 (a) (2), the substantial step portion of the attempt statute, amounted to harmful error. Because the court added a single sentence regarding "substantial step" to its proposed instruction, as emphasized in the preceding quotation, thereby incorporating § 53a-49 (a) (2) into its jury instructions, we review the defendant's claim.

────────────────────